1

2

3

4

5

6

7

8

9

10

11

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

TAMMY F.,

                   Plaintiff,

     v.

ACTING COMMISSIONER OF SOCIAL
SECURITY,

                 Defendant.

Case No. 3:22-CV-5900

ORDER REVERSING AND
REMANDING DEFENDANT'S
DECISION TO DENY BENEFITS

12       Plaintiff filed this action pursuant to 42 U.S.C. § 405(g) for judicial review of

13 defendant's denial of plaintiff's application for supplemental security income ("SSI")

14 Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and Local Rule

15 MJR 13, the parties have consented to have this matter heard by the undersigned

16 Magistrate Judge. Dkt. 2. Plaintiff challenges the ALJ's decision finding that plaintiff was

17 not disabled. Dkt. 4, Complaint.

18       Plaintiff filed her claim for SSI benefits on August 4, 2020. AR 15. She asserted

19 March 1, 2003 as the date of disability onset. *Id.* The hearing before the ALJ was held

20 by phone on January 6, 2022. AR 36-74. The ALJ found plaintiff had the following

21 severe impairments: schizophrenia, anxiety disorder, major depressive disorder, PTSD,

22 intellectual disability, and other mental health impairments. AR 17.

23       The ALJ posed hypothetical questions to the Vocational Expert (VE) (AR 64-66),

24 and based on the VE's testimony, the ALJ found plaintiff had the Residual Functional

25

1    Capacity (RFC) to perform: "simple, routine and repetitive tasks but not at a production

2    rate pace; frequent interaction with supervisors; occasional interaction with coworkers

3    and the public"; and the interaction with coworkers and the public would be limited to

4    superficial communication. AR 29.

5         Plaintiff did not have any prior work, so step four was not applicable. At step five,

6    the ALJ found plaintiff was not disabled, and she would be able to perform work in the

7    following occupations: Kitchen Helper, Collateral Operator, and Hand

8    Packager/Addresser. AR 30.

9         Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's

10   denial of Social Security benefits if the ALJ's findings are based on legal error or not

11   supported by substantial evidence in the record as a whole. *Revels v. Berryhill,* 874

12   F.3d 648, 654 (9th Cir. 2017) (internal citations omitted). Substantial evidence is "'such

13   relevant evidence as a reasonable mind might accept as adequate to support a

14   conclusion.'" *Biestek v. Berryhill,* 139 S. Ct. 1148, 1154 (2019) (internal citations

15   omitted). When it would be rational to interpret the evidence in more than one way, the

16   court is required to uphold the decision of the Commissioner. *Mayes v. Massanari,* 276

17   F.3d 453, 459 (9th Cir. 2001) (as amended).

18        The Court must consider the administrative record as a whole. *Garrison v.*

19   *Colvin,* 759 F.3d 995, 1009 (9th Cir. 2014). The Court also must weigh both the

20   evidence that supports and evidence that does not support the ALJ's conclusion. *Id.*

21   The Court may not affirm the decision of the ALJ for a reason upon which the ALJ did

22   not rely. *Id.* Rather, only the reasons identified by the ALJ are considered in the scope

23   of the Court's review. *Id.*

24

25
                                        2

A. ISSUES

1. Did the ALJ harmfully err by failing to develop the record concerning an intellectual disability?

2. Whether the ALJ erred in rejecting medical opinions by an examining psychologist.

3. Whether the ALJ provided sufficient reasons for rejecting plaintiff's statements about symptoms and limitations.

B. DISCUSSION

1. Whether the ALJ erred by not developing the record concerning evidence that plaintiff has an intellectual disability

Plaintiff contends that the ALJ had a responsibility to develop the record concerning evidence that plaintiff is an individual with an intellectual disability, to accurately formulate the plaintiff's residual functional capacity. Dkt. 11, at 3-5.

The ALJ was alerted to the concern when plaintiff's counsel asked for a consultive examination, at the start of the hearing. AR 40. Counsel for plaintiff told the ALJ there was a note in plaintiff's medical record that raised a question about whether an intellectual disability was present; the note was prepared on June 19, 2020, by David Paris, ARNP, MSN, PMHNP, a treatment provider who was administering medication to plaintiff for her mental health conditions. AR 290. Plaintiff reported that to ARNP Paris she experienced extensive domestic violence in multiple relationships since she was 16 years old. *Id.*

3

1

2        The Columbia Wellness psychiatric and medication evaluation report by ARNP Paris

3   states: "The patient is a challenging historian. She seems to have a poor recall of past

4   events, and her speech is somewhat slurred, with a paucity of diction that suggests

5   intellectual disability." AR 290.

6        In another medical record from Columbia Wellness, dated May 21, 2020, Alice

7   Larsen, MA, LMHC, MHP, prepared a report of a mental health assessment; during the

8   assessment, plaintiff indicated learning difficulties – that she had an "IEP" and her

9   education went only through eighth grade. AR 303. In addition, plaintiff stated she had a

10  history of a head injury at age 27 – she fell, and was hit by a boyfriend. *Id.* The health

11  care provider described plaintiff as "frightened and has little eye contact. . . currently

12  lives in a group home after recently being released from a year in prison." AR 305. The

13  notes also indicate plaintiff "has experienced multiple traumas and years of

14  homelessness and exhibits full array of symptoms for . . . PTSD. . . . "Social

15  impairments; isolation, inability to develop and maintain normal relationships or chronic

16  pattern of relational conflicts, unable to obtain or maintain reliable employment,

17  frequently disruptive or in trouble at work, <u>performance consistently below expectations</u>

18  <u>for developmental level</u>, inability to maintain safety. . . .Inadequate Housing: Examples

19  include lack of heat or electricity, infestation by insects or rodents, inadequate plumbing

20  and toilet facilities, overcrowding, lack of adequate sleeping space, and excessive

21  noise. Consider cultural norms. . . Extreme Poverty". AR 305 (emphasis added).

22       The claimant in a Social Security disability case has the burden to prove they are

23  disabled; but if there is ambiguous evidence or the record is inadequate for proper

24

25

4

1    evaluation of evidence, then the ALJ has a duty to further develop the record. *Ford v.*

2    *Saul,* 950 F.3d 1141, 1156 (9th Cir. 2020); *Mayes v. Massanari,* 276 F.3d at 459-460.

3    The Social Security disability hearings process is non-adversarial. *DeLorme v. Sullivan,*

4    924 F.2d 841, 849 (9th Cir. 1991). An ALJ's responsibility to provide an adequate record

5    is particularly important when the claimant is mentally ill. *See, Higbee v. Sullivan,* 975

6    F.2d 558, 561-563 (9th Cir. 1992) (ambiguity in the record was due to plaintiff's failure to

7    cooperate – but the failure to cooperate was the result of mental illness; under the

8    circumstances ALJ had a duty to further develop the record).

9        The duty of an ALJ to develop the record exists even if the claimant is represented

10   by counsel, *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 1983); but, the heightened

11   duty to be *especially diligent* when the claimant is not represented by counsel does not

12   apply to a represented plaintiff. *Chaudhry v. Astrue,* 688 F.3d 661, 669-670 (9th Cir.

13   2012) (distinguishing *McLeod v. Astrue*, 640 F.3d 881, 885-886 (9th Cir. 2011)). When

14   the record is inadequate or there is ambiguous evidence, there is no need for a specific

15   finding by the ALJ before the duty to develop the record is triggered. *McLeod v. Astrue,*

16   640 F.3d at 885.

17      The defendant contends that if the ALJ committed error, any error in failing to further

18   develop the record would have been harmless. Dkt. 18 at 3. The defendant asserts that,

19   unlike the situation in *Garcia v. Commissioner of Social Sec.,* 768 F.3d 925, 931 (9th Cir.

20   2014), where the IQ tests to evaluate plaintiff's intellectual capacity and functioning

21   were incomplete, in this case there was no evidence in the record of any IQ testing or

22   other assessment of intellectual capacity or functioning. Dkt. 18 at 4. The defendant

23   asserts the reason plaintiff dropped out of school was a pregnancy at age 16; yet, the

24

25

1  defendant does not point to any facts that would suggest the plaintiff's pregnancy at age

2  16 somehow would cancel out the evidence of intellectual disability. The record shows

3  plaintiff was 16-years-old in eighth grade at the time she dropped out of school, and she

4  had an IEP[1];  (individualized educational program); an IEP indicates she had been

5  found to have a disability and she needed special education and related services. This

6  is corroborated by other evidence in the record of a serious academic problem. AR 305.

7      At the time of her application in August 2020, plaintiff was 51 years old and had not

8  ever been employed; she had been homeless for many years; during the hearing, she

9  described her apartment as being a place she had lived for just two years -- transitional

10  clean-and-sober housing. AR 41-42.

11      On this record, the ambiguity is present because there is evidence from May and

12  June of 2020 that a treatment provider noticed speech problems, and was concerned

13  plaintiff might have a potential intellectual disability; plaintiff had a disability during her

14  time in school -- she had an IED and she dropped out in eighth grade at age 16. AR

15  290, 303-305.  Also, plaintiff reported that she had a head injury at age 27 and had

16  multiple relationships that involved extreme domestic violence (it would be reasonable

17  to infer that ongoing domestic violence would have potential for exacerbation of

18  symptoms and limitations associated with a head injury). AR 305. Moreover, was noted

19

20  [1] An Individualized Education Program is prepared in compliance with the Individuals with Disabilities Education
Act (IDEA), 20 U.S.C. § 1414(d). Under the IDEA, school districts must "identify and evaluate disabled children, . .
. develop an [Individualized Education Program] for each one. . ., and review every IEP at least once a year."

21  *Shaffer ex rel. Shaffer v. Weast,* 546 U.S. 49, 53 (2005). A school district is required to have an IEP for a "child with
a disability", 20 U.S.C. § 1401(14).

22  The criteria for determining whether a child has a disability that would mandate an IEP is defined generally: "a child
– (i) with intellectual disabilities, hearing impairments (including deafness), speech or language impairments, visual

23  impairments (including blindness), serious emotional disturbance . . ., orthopedic impairments, autism, traumatic
brain injury, other health impairments, or specific learning disabilities; and (ii) who, by reason thereof, needs special

24  education and related services." 20 U.S.C. § 1401(3)(A).

25

1   by a mental health counselor in May of 2020, that plaintiff's performance was

2   compromised and below what would be developmentally expected. AR 305.

3       The ALJ's error would be harmful, considering the record as a whole. The ALJ found

4   plaintiff had the severe condition of intellectual disability, but the questions posed to the

5   Vocational Expert did not fully incorporate this disability because the record is

6   incomplete. The ALJ had a duty to further develop the record concerning the intellectual

7   capacity and functional limitations of the plaintiff for purposes of properly evaluating her

8   symptoms and work-related limitations. If full testing and evaluation had been

9   accomplished relating to IQ and other indicia of potential impact from intellectual

10  disability, this may affect the RFC determination because the medical professionals

11  would have additional information about IQ testing and other data, from which to assess

12  plaintiff's symptoms, limitations, and functional capacity. *See, Garcia,* 768 F.3d at 933-

13  934 ("The fact that IQ test results may be considered by multiple reviewing experts, as

14  well as by the ALJ, makes it particularly difficult to conclude that any error affecting the

15  quality of those results is 'inconsequential to [an] ultimate nondisability determination,'

16  let alone to conclude that such harmlessness is 'clear from the record.'" (quoting

17  *Tommasetti v. Astrue,* 533 F.3d 1035, 1038 (9th Cir. 2008)).

18      This, in turn, may affect the RFC and the hypothetical questions to the Vocational

19  Expert, answers to which are considered by the ALJ in determining whether plaintiff is,

20  or is not, disabled. The ALJ asked only one question that arguably was related to

21  intellectual capacity of plaintiff – "if my hypothetical individual. . .*due to concentration*

22  *issues . . .or whatnot* was only 80% as productive as your good average coworker that

23

24

25

1   would also be job preclusive, is that correct?" AR 65 (emphasis added). The VE

2   responded that it would be preclusive of all full-time employment. AR 65, 68.

3         2.   Medical evidence

4       Plaintiff contends the ALJ failed to properly consider the opinions of Dr. Morgan. Dkt.

5   11 at 9-12. The defendant asserts the ALJ properly rejected the opinion of Dr. Morgan

6   because Dr. Morgan only reviewed records from the Washington State DSHS, and a

7   psychological evaluation. Dkt. 18, Defendant's Brief at 14-15; AR 28, 382.

8       Plaintiff was evaluated on March 10, 2021, by Licensed Psychologist Dr. David T.

9   Morgan, PhD. AR 389. Dr. Morgan diagnosed plaintiff with agoraphobia and depression.

10   AR 384. Dr. Morgan found plaintiff had marked mental limitations in the ability to

11   perform activities within a schedule, learn new task, perform routine tasks without

12   speciflc supervision, adapt to changes in a work setting, make simple work-related

13   decisions, ask simple questions, communicated and perform effectively, maintain

14   appropriate behavior, complete a normal workweek without psychological interruption,

15   and set realistic goals. *Id.* The ALJ found Dr. Morgan's opinions unpersuasive. AR 28-

16   29.

17       Under the 2017 regulations, the Commissioner "will not defer or give any specific

18   evidentiary weight . . . to any medical opinion(s) . . . including those from [the claimant's]

19   medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must nonetheless

20   explain with specificity how he or she considered the factors of supportability and

21   consistency in evaluating the medical opinions. 20 C.F.R. §§ 404.1520c(a)–(b),

22   416.920c(a)–(b). An ALJ may consider whether there are gaps in medical evidence, and

23   whether the longitudinal medical record supports the medical expert's opinion. 20

24

25

1 | C.F.R. §§ 416.912 (a)(2); 416.920b(a)(b). A finding that a physician's opinion is

2 | inconsistent with the medical record and not well-explained is a legally permissible

3 | reason for discounting that opinion. *See* 20 C.F.R. § 416.920(c)(5) (ALJ may consider

4 | whether a medical source is familiar with the other evidence in the claim).

5 |     The Ninth Circuit considered the 2017 regulations in *Woods v. Kijakazi*, 32 F.4th 785

6 | (9th Cir. 2022). The Court found that "the requirement that ALJ's provide 'specific and

7 | legitimate reasons'[2] for rejecting a treating or examining doctor's opinion…is

8 | incompatible with the revised regulations" because requiring ALJ's to give a "more

9 | robust explanation when discrediting evidence from certain sources necessarily favors

10 | the evidence from those sources."  *Id.* at 792. Under the 2017 regulations,

11 |     an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by

12 | substantial evidence. The agency must "articulate ... how persuasive" it finds "all of the medical opinions" from each doctor or other source, 20

13 | C.F.R. § 404.1520c(b), and "explain how [it] considered the supportability and consistency factors" in reaching these findings, *id.* § 404.1520c(b)(2).

14 | *Id.*

15 |     Although the report states that Dr. Morgan reviewed a psychological evaluation, Dr.

16 | Morgan's assessment does not state whether any treatment records were reviewed.

17 | Therefore, the ALJ properly discounted this opinion because it does not appear the

18 | expert was familiar with plaintiff's treatment records. 20 C.F.R. §§ 416.920b,

19 | 416.920(c)(5). Therefore, the ALJ had substantial evidence upon which to find the

20 | opinion was unpersuasive, because of unfamiliarity with the treatment record.

21 |     3.  Plaintiff's statements regarding subjective symptoms

22 |

23 |

[2] *See Murray v. Heckler,* 722 F.2d 499, 501 (9th Cir. 1983) (describing the standard of "specific and legitimate reasons").

24 |

25 |

1        Plaintiff contends that the ALJ erred by failing to provide sufficient reasons for not

2    incorporating fully plaintiff's subjective claims; however, the Court already has

3    concluded that the ALJ committed harmful error, the record needs to be further

4    developed concerning plaintiff's intellectual disability, and the medical evidence should

5    be reviewed anew, *see supra*, Section B.1. A determination of a claimant's credibility

6    relies in part on the assessment of the medical evidence. *See* 20 C.F.R. §§

7    416.912(a)(1), (b)(ii); 416.916 (requiring the claimant to produce "all evidence known to

8    your that relates to whether or not you are . . . disabled", and not excusing a claimant

9    from producing such evidence, or for refusing to be examined, tested, or treated, for

10   religious or personal reasons). Therefore, plaintiff's credibility should be assessed anew

11   following remand of this matter.

12

13

14

15

16

17

18

19

20

21

22

23

24

25

CONCLUSION

Based on the foregoing discussion, the Court concludes the ALJ improperly determined plaintiff to be not disabled. Therefore, the ALJ's decision is reversed and remanded for further administrative proceedings. The Commissioner is directed to fully develop the record concerning evidence of plaintiff's intellectual disability. The Commissioner is also directed to hold a new de novo hearing and allow plaintiff to present additional evidence. The five-step process may then be conducted to determine whether plaintiff is, or is not, disabled.

Dated this 19th day of September, 2023.

Theresa L. Fricke
United States Magistrate Judge

11